IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANTONE BESSY and KANASHA WOODS,
on behalf of themselves and all others
similarly situated,

                Plaintiffs,                      OPINION AND ORDER

    v.

                                                    17-cv-034-wmc

PER MAR SECURITY AND RESEARCH CORP,

                Defendant.

---

Plaintiffs Antone Bessy and Kanasha Woods allege that their former employer Per Mar Security and Research Corp violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), as well as Wisconsin wage and hour statutes, by failing to pay required overtime, either because the wrong wage rate was used or because of under reporting hours worked. This court conditionally certified two FLSA collective actions previously, to which a number of employees opted in. Before plaintiffs had even filed a motion for class certification of a state law class (or classes) under Federal Rule of Civil Procedure Rule 23, the parties filed a joint motion for preliminary approval of a global settlement. (Dkt. #127.) As set forth below, the court has a number of concerns about the proposed settlement. Accordingly, the court will reserve on the motion for preliminary approval pending additional information or amendment of the settlement, or both.

BACKGROUND

Plaintiffs are former Special Events employees for Per Mar Security and Research Corp's Milwaukee branch. Per Mar provides security services to business and residential customers, including security systems and securities guards, located throughout the

Midwest, with twenty-three branch locations in thirteen states. Five branch offices in Wisconsin provide security guard services: Eau Claire, Green Bay, Madison, Milwaukee and Wausau.

As indicated above, the court previously conditionally certified two FLSA collective actions: (1) all Per Mar employees pursuing a claim based on defendant's method for calculating the rate of pay during overtime hours; and (2) Per Mar Wisconsin employees pursuing a claim based on under-reported hours worked. As part of the settlement, the parties now seek to certify the following, Rule 23 class:

> All Per Mar security officers who, during at least one workweek during the time period between June 9, 2015 and the present, received overtime compensation for overtime hours worked in Wisconsin computed by using an overtime rate based upon the type of work performed during overtime hours, rather than a blended rate based upon all hours worked during that same week who did not timely opt into the FLSA class.

Essentially, this Rule 23 class involves the same claim at issue in the first FLSA collective action, but only covers employees who did *not* opt-in to the FLSA collective action.

Ultimately, four hundred employees affirmatively opted into the FLSA collective action on a timely basis.[1] The parties represent that far fewer (approximately 150 employees) ever received overtime computed by using a rater lower than the average wage rate earned during the workweek. Only this smaller group would be eligible for a settlement payout under the collective action claim, although it appears that there are another 100 to 150 employees who did not opt into the FLSA collective action that would be entitled to a payout under a blended rate claim as members of the putative state law class under Rule

---

[1] As addressed below, other employees apparently filed *untimely* opt-in forms, which were the subject of a motion to strike by defendant, though not yet under advisement at the time the parties reached their settlement.

2

23. (Joint Br. (dkt. #128) 5 (representing that a total of 250-300 employees have valid overtime pay claim).)

As for the second FLSA collective action -- concerning alleged under-reporting of hours -- plaintiffs have agreed not to seek final certification of that claim as a class because "[f]urther discovery . . . suggested that the decision on whether to record scheduled or actual work hours on employee timecards as their worktime was made by individual supervisors, rather than influenced by uniform Per Mar policies." (*Id.* at 4.) Accordingly, the proposed settlement payout does not encompass that claim, even though it appears the broad release language would cover this and any other FLSA claims.

As for the terms of the settlement, Per Mar agrees to pay a total sum of $42,084.89, as follows:

- $1,000.00 to named plaintiff Antone Bessy, with $600.03 as settlement payments and $399.97 as an incentive award;

- $500.00 to named plaintiff Kenasha Woods;

- $3,788.82 to members of the FLSA collective action who do not opt out of the settlement;

- $2,795.96 to members of the Rule 23 class action who do not opt out; and

- $34,000 to the Previant Law Firm S.C., "in return for the Plaintiffs' agreement to waive their right to petition the Court for attorneys' fees and costs against Per Mar." [2]

(Settlement Agreement (dkt. #127-1) ¶ 3.)

The two named plaintiffs release *all* claims related to their employment relationship, extending well beyond the FLSA and state law wage and labor claims at issue here. (*Id.* at

---

[2] The Settlement also contemplates that plaintiffs' counsel has the right to petition the court for expenses incurred in administering the settlement agreement, which would be paid out of the class recovery.

3

¶ 9.) More critically, "all member of the FLSA and Wisconsin law class who were eligible to receive a payment" would release "any and all present, past and future claims under the Fair Labor Standards Act, and/or Wis. Chapters 103 and 109, and Wis. Admin. Code §§ DWD 272 and 274[.]" (*Id.* at ¶ 10.) The parties attach two proposed notices, one for FLSA opt-in members and one for Rule 23 class members. (Dkt. ##127-2, 127-3.)

OPINION

After reviewing a motion for preliminary approval of a proposed FLSA collective action or Rule 23 class action settlement, the court would typically schedule a telephonic conference to discuss any concerns. Because the concerns here are too voluminous to describe productively during a telephonic conference, the court will reserve on the motion pending responses from the parties in the form of an amended settlement agreement with attached materials, a written explanation as to why the court's concerns are not warranted, some combination of those two, or some other response.

I.  **Attorneys' Fee Award**

In their joint submission, the parties fail even to mention the settlement provision concerning attorneys' fees. As a consequence, they also fail to explain how such an award would be fair and reasonable. Whether proposed as a structured fee set forth in a specific amount in the settlement or as an award to be determined later, the court is required to approve an FLSA and Rule 23 class settlement, and the attorney's fee provision is a critical aspect of that settlement.

Baking the amount of the attorney's fees into the preliminary settlement itself, rather than simply agreeing that class counsel could seek a reasonable fee or a certain

percentage of the settlement fund, without defendant opposing it, is not unheard of, but not preferable, even though subject to final court approval. Such a treatment of the fee award is hardly surprising here given that the fee award represents approximately 80% of the total settlement payment, an extraordinarily high percentage, and obviously significantly higher than the 25-33% range typically approved by this court. Even as a preliminary matter, approval of this aspect of the settlement agreement will require greater explanation by plaintiffs' counsel.

## II. Releases

As mentioned above, the named plaintiffs release all claims based on their employment relationship with defendant, extending well beyond the wage and hour claims at issue here. Understandably, the resolution of those two individuals' claims is intended to extend beyond the specific FLSA and Wisconsin state law claims at issue here. Given that the named plaintiffs are presumably aware of the full scope of the release in signing the settlement agreement and are being individually compensated for this broad release, paragraph 9 of the settlement agreement appears reasonable on its face.

However, the same cannot be said with regard to the general release in paragraph 10 of the settlement agreement, which purports to apply to "all members of the FLSA and Wisconsin law classes who were *eligible* to receive payment" for all claims under the the FLSA and relevant chapters of Wisconsin state law for unpaid wages. (Settlement Agreement (dkt. #127-1) ¶ 10 (emphasis added).) There appear to be at least three core problems with this release. *First*, those employees who did *not* opt into the FLSA collective action but are members of the Wisconsin Rule 23 class should not be deemed to have

5

released their FLSA claim by not opting out of the Rule 23 class settlement. In not opting into the FLSA claim, these employees preserved their right to pursue individual FLSA claims. Similarly, opt-in members of the FLSA collective action cannot be deemed to have released their state law claim since, by the class's very definition, they are not members of the Rule 23 class. *See, e.g.*, *Bates v. Kerry*, No. 13-cv-142 (W.D. Wis. Oct. 17, 2013) (dkt. #139); *Sherburn v. Duluth Trading Co., LLC,* Case No. 11-cv-428 (W.D. Wis. Apr. 16, 2012) (dkt. #38); *Turner v. Superior Satellite Servs., Inc.*, No. 11-cv-92 (W.D. Wis. Apr. 6, 2012) (dkt. #111). *Second*, even if "eligible" to receive payment, any members of either the FLSA collective action or the Rule 23 class who opt-out of the settlement have obviously not released any claim. Perhaps this just requires clarification, but inclusion of the word "eligible" is problematic. *Third*, the release purports to cover not only all past and present claims, but also all "future" FLSA and Wisconsin state wage claims. Given that current PGA employees are members of the collective action and putative Rule 23 class, it is not reasonable to require them to release *future* claims. The release should also expressly exclude the FLSA underpayment claim that plaintiffs have abandoned as a collective action given the individual questions at stake and the settlement does not encompass that FLSA claim.

### III.  Adequacy of Bessy as Class Representative

The court has two concerns with Bessy serving as the class representative of the Rule 23 Wisconsin law class. *First*, and most fundamentally, given that the class definition *excludes* all member of the FLSA collective action, Bessy does not appear to be a member of the class. *Second*, the fact that Bessy's payment extends beyond the FLSA and Wisconsin

state law claim to include compensation for missed "per diems" -- a claim not presented in this lawsuit -- raises a question as to whether he has a conflict of interest, implicating the adequacy requirement under Rule 23.  *See Hillgamyer v. Reliastar Life Ins. Co.*, No. 11-cv-729 (W.D. Wis. Sept. 30, 2013) (dkt. #90).  The parties must address these concerns or identify another individual to serve as Class Representative of the Rule 23 class

**IV.   Additional Information about Settlement Payments**

In their joint submission, the parties represent that "[t]he proposed settlement pays the FLSA and Wisconsin law classes for every penny of overtime pay they would have received had Per Mar used the blended rate method to compute it, without allowing any offset to Per Mar for workweeks when it paid to class members more overtime pay than the amount required by law."  (Joint Br. (dkt. #128) 9.)  Given the small amount of settlement funds for the FLSA collective action ($3,788.82) and Rule 23 class ($2,795.96) and the relatively large number of members, the average award appears to be quite small.  By the court's math, an FLSA collective action member will receive, on average, $25 ($3,788.82 / 150), and a Rule 23 class member will receive, on average, $22 ($2,795.96 / 125).  The court needs confirmation or additional information as to why the amount of these payouts is fair, reasonable and adequate.

The parties further represent that the settlement agreement provides "minimal liquidated damages to FLSA class members" but does not quantify that amount.  (*Id.* at 9.)  Here, too, the court needs additional information to assess the reasonableness of the settlement of the FLSA collective action as it stands alone and in comparison to the Rule 23 class settlement.

## V. Concerns about the Notices

The court also has several concerns about the proposed notices.

### 1. Failure to Acknowledge Prior FLSA Collective Action Notice

The parties propose two notices, the first addressed to FLSA opt-in members; the second addressed to Rule 23 class members. All of these individuals have already received an FLSA collective action notice. For those employees who did not opt into the FLSA collective action, receiving a second notice about a settlement of state law claims could be confusing, at least without reference to or explanation of the prior notice. Accordingly, that notice (dkt. #127-3) must (1) acknowledge that this is the second notice that they have received, (2) indicate that they previously opted not to join an FLSA collective action, and (3) explain that they are now members of a class action under a state law (rather than federal) claim. Moreover, some unknown number of employees attempted to opt into the FLSA collective action but apparently failed to submit a timely form. Those individuals must be notified of their failure to opt into the FLSA collective action; otherwise, receipt of the Rule 23 class action settlement notice may be confusing.

### 2. Lack of Separate Section Describing Opting Out

While the notices each explain in the "Your Legal Rights and Options In This Settlement Section" that a collective action or class member may opt out of the settlement, the Notice does not contain a separate section describing how to opt out. Each notice, after the "Claims Process" section, but before the "Objecting to the Settlement" section, should contain a separate section describing "Opting Out of the Settlement." That section should include the language starting with "unless you opt out . . ." buried in the "How can

I get a payment?" section.

### 3. "Blended Rate Method"

In the description of the claims, the parties should next identify the legal claim by some short-hand phrase (e.g., "blended rate method"), then consistently use that phrase in subsequent description of the settlement. For example, in ¶ 2 of the FLSA Notice, the sentence should read: "The lawsuit advances a single class claim that when you received pay at more than one rate during a workweek, Per Mar is required to compute your overtime pay using the average wage rate that you earned during the workweek ('the blended rate method') . . . ." And later in ¶ 4, the sentence at the top of p.3 should read: "If you participate in the settlement, we expect you will receive all overtime wages you should have received had Per Mar computed your overtime pay using the blended rate method."

### 4. Release

The release language in ¶ 5 must be modified to address the court's concern about the scope of the release in the settlement agreement itself.

### 5. "Getting More Information" Section

The notices must indicate that in addition to asking for a copy of the settlement agreement, members may also contact Class Counsel with any questions. Moreover, it is typical for class counsel to provide a website with the settlement agreement and any other pertinent case documents for members to review in deciding whether to opt out of the settlement. Absent a good reason for not doing so, class counsel shall create such a website.

6. **Attorneys' Fee**

While the proposed notices mention that the settlement agreement provides for a $34,000 attorneys' fee award, the notices stop short of indicating that class members may object to that award. After the sentence describing the $34,000 fee request, therefore, the following sentence should be added: "You may object to this payment as described below." Moreover, the section dealing with "Objecting" should not be limited to "the costs of mailing notices to class members," but instead should read "including but not limited to the proposed use of settlement monies to pay the proposed attorneys' fees and costs."

7. **Typographical Errors and Related Concerns**

The notices contain several typographical errors, odd phrasing and style issues. The court notes a few below, but class counsel should review both notices carefully to remove any additional errors. As the court has already indicated in this case, "details matter in ensuring that employees receiving these notices view them as legitimate, rather than as scam or junk mail." (4/17/18 Order (dkt. #64) 2-3.)

- Refer to "Notice" not "notice package;" consistently use capital N in both Notices
- Add a space between "the" and "settlement" -- second line of p.2 of dkt. #127-2
- Change repeated references to "31th" day to "31st" day in both Notices
- Remove comma before "It" -- second to last line in ¶ 2 on p.2 of dkt. #127-2
- Remove "for" before "the claims" in ¶ 3 of dkt. #127-2
- Remove "when" before "you can recover" in ¶ 4 of dkt. #127-2
- Remove "else" after "everyone" in ¶ 4 of dkt. #127-2; change "do not" to "does not" in same sentence
- Spell out 1/2 as "half" in ¶ 4 of dkt. #127-2
- Change "filing" to "filling" in ¶ 5 of dkt. #127-2

10

- Change references to "Plaintiff Class members" to reflect that this is going to "FLSA Collective Action Members" in ¶ 10 of dkt. #127-2

- Remove "for" after "class action permits" in ¶ 3 of dkt. #127-3

- Fix spacing issue at bottom of p.2 of dkt. #127-3

- Spell out 2/3 as "two-thirds" and 1/3 as "one-third" in ¶ 4 of dkt. #127-3

- Correct reference to "FLSA action" in ¶ 13 of dkt. #127-3; should refer to Wisconsin state law class action

ORDER

IT IS ORDERED that:

1) The parties' joint motion for preliminary approval of settlement agreement (dkt. #127) is RESERVED.

2) As detailed above, a revised settlement agreement, supplemental brief or other supporting materials, or other response is due on or before December 5, 2018.

Entered this 14th day of November, 2018.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge