IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANTONE BESSY and KANASHA WOODS,
on behalf of themselves and all others
similarly situated,

                       Plaintiffs,                       OPINION AND ORDER

    v.                                                     17-cv-034-wmc

PER MAR SECURITY AND RESEARCH CORP,

                       Defendant.

---

Plaintiffs Antone Bessy and Kanasha Woods allege that their former employer Per Mar Security and Research Corp failed to pay statutorily required overtime, either by using the wrong wage rate or by under reporting hours worked. Previously, this court conditionally certified two collective actions under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), to which a number of employees opted in. Before plaintiffs had even filed a motion for class certification (or classes) under Federal Rule of Civil Procedure Rule 23 based on related Wisconsin wage and hour statutes, however, the parties filed a joint motion for preliminary approval of a global settlement. (Dkt. #127.)

In a prior opinion and order, the court set forth several concerns about the proposed settlement, requiring the parties to provide additional information or an amendment of the settlement. (Dkt. #130.) In response, the parties filed a revised settlement agreement, revised notices, a declaration by plaintiffs' counsel setting forth damages calculations and a joint brief. (Dkt. ##131-133.) These additional materials largely assuage the court's concerns with the exception of the amount of money presented allotted for attorneys' fees. Nonetheless, this remaining concern does not preclude the court from granting preliminary approval, understanding that plaintiffs' counsel will need to provide additional support for

such a large award at the fairness hearing.

BACKGROUND

Per Mar Security and Research Corp provides security services to business and residential customers, including security systems and securities guards, located throughout the Midwest, with twenty-three branch locations in thirteen states. Five Per Mar branch offices in Wisconsin provide security guard services: Eau Claire, Green Bay, Madison, Milwaukee and Wausau. Plaintiffs were "Special Events" employees for Per Mar's Milwaukee branch.

The court conditionally certified two FLSA collective actions: (1) all Per Mar employees pursuing a claim based on defendant's method for calculating the rate of pay during overtime hours; and (2) Per Mar Wisconsin employees pursuing a claim based on under-reported hours worked. As part of the settlement, the parties now seek to certify the following Rule 23 class:

> All Per Mar security officers who, during at least one workweek during the time period between April 17, 2015, and the present, received overtime compensation for overtime hours worked in Wisconsin computed by using an overtime rate based upon the type of work performed during overtime hours, rather than a blended rate based upon all hours worked during that same week.

(Revised Settlement Agreement (dkt. #131) ¶ 2.)

Ultimately, four hundred employees affirmatively opted into the FLSA collective action on a timely basis. By the court's count, approximately 108 employees who opted into the FLSA collective action actually received overtime computed by using a rater lower than the average wage rate earned during that workweek. (Ho Decl., Ex. 1 (dkt. #133-

2

1).)[1]  The members of the FLSA collective action each receive the exact amount of the underpayment computed by the parties, plus a small liquidated damages award of 3.4% of those underpaid wages. If anyone opts out of the settlement, then the money allotted to opt-out members will be reallocated as liquidated damages to the FLSA collective action members who did not opt-out of the settlement.

The parties provide a list of an additional 358 employees, who did not opt into the FLSA collective action. (Ho Decl., Ex. 2 (dkt. #133-2).) However, a significant portion of those employees were not underpaid anyway. Indeed, the records reflect that group as a whole was *overpaid* by approximately $400. From the court's count – again, the parties failed to provide any helpful summary of this information -- there are approximately 156 employees that would be entitled to a payout under a blended rate claim as members of the putative, Rule 23 state law class.[2]

As for the terms of the settlement, Per Mar agrees to pay a total sum of $42,084.89, as follows:

- $980.00 to named plaintiff Antone Bessy, with $580.03 as settlement payments and $399.97 as an incentive award;[3]

---

[1] Plaintiffs' list contains 158 names, but of those, 50 were underpaid $0.00. For obvious reasons, it would have been helpful if the parties actually quantified the number of FLSA collective action members and the number of Rule 23 class members, and the parties will need to do so before the final fairness hearing.

[2] Plaintiffs' counsel also attached exhibits purportedly containing additional damage computations for employees by employee number. (Ho Decl., Exs. 3-4 (dkt. ##133-3, 133-4). This information is entirely unhelpful. Perhaps these calculations change the number of employees who have been underpaid, but there is no way for the court to make this determination. Again, this will need to be corrected before the fairness hearing.

[3] Of his $580.03 settlement payout, only $20.09 are related to the class claims at issue in this case, while the remainder are for individual claims. Accordingly, Bessy will receive $18.36 for his state law claim, and an additional $1.72 covering liquidated damages for his FLSA claim.

- $500.00 to named plaintiff Kanasha Woods;

- $3,897.46 to members of the FLSA collective action who do not opt out of the settlement;

- $2,723.32 to members of the Rule 23 class action who do not opt out; and

- $34,000 to the Previant Law Firm, S.C., "in return for the Plaintiffs' agreement to waive their right to petition the Court for attorneys' fees and costs against Per Mar."[4]

(Revised Settlement Agreement (dkt. #131) ¶ 3.)

The two named plaintiffs also release *all* individual claims related to their employment relationship, extending well beyond the FLSA and state law wage and labor claims at issue here. (*Id.* at ¶ 9.) Under the revised settlement, however, the other members of the FLSA collective action and Rule 23 state law class action only release claims "for unpaid wages or overtime compensation based on Per Mar's alleged failure to use a blended rate to compute overtime pay during their employment through the date of the full execution of [the] Settlement Agreement." (*Id.* at ¶ 10.) Consistent with these changes, as well as other concerns previously raised by the court, the parties attach two proposed, revised notices, one for FLSA opt-in members and one for Rule 23 class members. (Dkt. ##131-2, 131-3.)

OPINION

As detailed in its prior opinion and order, the court had several concerns with the parties' initial submission. The court is satisfied that the revised settlement agreement, notices and the additional information provided by the parties addresses most of those

---

[4] The Settlement also contemplates that plaintiffs' counsel has the right to petition the court for expenses incurred in administering the settlement agreement, which would be paid out of the class recovery.

4

concerns. Specifically, except for the two named plaintiffs, the parties changed the scope of the release in the settlement agreement and in the notices to limit its reach only to the blended rate method claim at issue in this case. The parties also limited the release for the Wisconsin state law class members to just that claim, theoretically allowing them to proceed an FLSA claim if they so choose, while recognizing that any additional relief would be limited.[5] The court is also satisfied that the modification to the class definition, coupled with the different structuring of Bessy's settlement award qualified him as a class representative, and that his receiving money for individual claims does not preclude him from serving in that role, especially since the class members are receiving full payment of their unpaid wages.

Although still somewhat lacking, the parties similarly provided additional details in the revised settlement about the individual awards, offering a sufficient basis for the court to conclude that the FLSA collective action members are receiving a small benefit in the form of a longer period for damages and a small liquidated damages award. Given the risks at issue with the FLSA claim specifically,[6] the court further concludes that the treatment of FLSA collective action members, in isolation and as compared to the Rule 23 class members, is fair and reasonable.

This leaves the court's remaining concerns about approving a settlement that awards attorney's fees in the amount of $34,000, representing *80%* of the total settlement payment. In the settlement agreement, the parties apparently attempt, albeit

---

[5] The court agrees with counsel that the FLSA collective action members have effectively released any state law claim since the damages they are receiving fully cover any state law violation.

[6] Plaintiffs' FLSA claim would require a finding of willfulness to secure the three-year, rather than two-year, period of damages.

5

unsuccessfully attempt, to carve out this provision from court review. Regardless of the semantics, defendant PGA agreed to pay approximately $42,000 to settle this lawsuit, with $34,000 ear-marked to plaintiffs' counsel for their fees. Because this is part of the settlement agreement, it is subject to court review. Any further attempt to foreclose court review of this provision would, if anything, entrench concerns about collusion between plaintiffs' counsel and defendant to the detriment of the settling class. Moreover, this court *always* considers the percentage of the settlement payment going to attorneys' fees and costs, even when the court considers a lodestar calculation.

Plaintiffs also point to the fact that the underlying claims contain fee-shifting provisions, arguing that to limit the award here would effectively penalize plaintiffs' counsel for pursuing a class claim. That argument falls flat as well. The fact that this case was brought as a class action certainly increased the time counsel spent on this case. Indeed, a perusal of counsel's records reveals that a significant portion of the time was devoted to class issues. As such, the requested fees *necessarily* are tied to the claims being brought as a class. Moreover, fee-shifting provisions still require the court to consider whether the fees incurred were reasonable.

Finally, plaintiffs point to two Seventh Circuit cases, in which the court approved fee awards computed using the lodestar method that exceeded the amount recovered for the plaintiffs. (Joint Br. (dkt. #132) 11.) However, those cases do not provide clear support for plaintiffs' position here. In *In re Sears*, 867 F.3d 791, 792 (7th Cir. 2017), the Seventh Circuit instructed the district court to "compare attorney fees to what is actually recovered by the class and presume that fees that exceed the recovery to the class are *unreasonable*," although the court clarified that the presumption is "not irrebuttable," it

6

certainly raises the bar for plaintiff. While the *Sears* court concluded that "the extensive time and effort that class counsel had devoted to a difficult case against a powerful corporation entitled them to a fee in excess of the benefits to the class," no such showing has been made here. *Id.* If anything, the evidence would appear to preclude such a finding. The second case, arguably provides more support. In *In re Southwest Airlines Voucher Litigation*, 799 F.3d 701 (7th Cir. 2015), the court approved a fee award of $3,000,000 over objectors because:

> It is an exceptional settlement that actually makes the class whole. When counsel come away from the negotiating table with everything the client could hope for, they should be compensated accordingly. That is what happened in this case. No class members have legitimate or even plausible claims to more than they will receive under the settlement.

*Id.* at 712.

Because the FLSA collective action members and Rule 23 class members appear to receive everything they are due respectively under the FLSA or Wisconsin state law, perhaps plaintiffs' counsel's attorneys' fee request is reasonable under the reasoning in *Southwest*. As such, the court will preliminarily approve the settlement, while still requiring plaintiffs' counsel to provide further justification for such a sizeable award when viewed in relationship to the money devoted to the class.

ORDER

**Preliminary Settlement Approval**

1. Based upon the court's review of the parties joint motion for preliminary approval of settlement agreement (dkt. #127), as well as plaintiffs' revised brief in support

and other materials submitted in connection with the motion, preliminary approval of the settlement is GRANTED.

2.     At this preliminary stage, the court also finds that (a) the proposed settlement "is within the range of possible approval," *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); and (b) it was reached as a result of vigorously-contested litigation to resolve bona fide disputes, *see Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982).

3.     The court further finds that the proposed settlement appears to be the result of extensive, arm's-length negotiations by counsel well-versed in the prosecution and defense of wage-and-hour class action lawsuits.

4.     While the court is satisfied that the settlement is facially reasonable, it will again scrutinize class counsel's application for attorneys' fees when the time comes for final approval of the settlement.

**Class Notice and Settlement Procedure**

5.     The court approves the proposed notices (dkt. ##131-2, 131-3) subject to the following modifications:

For both notices:

- Use a consistent heading style (*see, e.g.,* "Basic Information" uses small caps, whereas "Claims Process" uses all caps).

- Remove "approximately" in the "Do Nothing" portion of the description of "Your Legal Rights and Options In This Settlement."

- For purposes of opting out and objecting, allow 45 days from date of mailing the notices. Ensure that the dates reflect the current year, 2019.

- Remove the period after WI in the addresses located in ¶¶ 8 and 13.

<u>FLSA notice:</u>

- Add a space after "workweek" and before "('the Blended Rate Method')" in ¶ 2 under Basic Information.

- Fix spacing issue in ¶ 13.

<u>Rule 23 notice:</u>

- On page one, in the first bullet point paragraph, change "FLSA claims" to "federal Fair Labor Standards Act claims."

6. With those modifications, the court finds that the Rule 23 Notice also satisfies each of the requirements of Fed. R. Civ. P. 23(c)(2)(B) and adequately puts the Rule 23 class members on notice of the proposed settlement.

7. The court approves the following settlement procedure and timeline:

   a) no later than March 4, 2019, class counsel will mail the notices to the FLSA collective action members and the Rule 23 class members;

   b) members of each group will have 45 days from the date of the mailing to review the terms of notices and submit a request to be excluded or to file any objections;

   c) any supplemental briefing on the parties' motion for final approval of the settlement and any objection to class counsel's fee petition are due on or before May 15, 2019; and

   d) the court will hold a fairness hearing on Wednesday, May 22, 2019, at 1:00 p.m.

Entered this 11th day of February, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge