**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

**ANTONE BESSY and**
**KANASHA WOODS,**

**on behalf of themselves and**
**all others similarly situated,**

    Plaintiffs,

    v.                                                     Case No.  17CV34

**PER MAR SECURITY AND**
**RESEARCH CORP,**

    Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFFS' FEE PETITION**

---

### I.    Facts and Introduction.

Under the parties' settlement agreement, Per Mar will pay a total of $3,897.46 to members of the FLSA class, and $2,727.32 to members of the Wisconsin class.  As no one entitled to a payout under the settlement agreement opted out, each class member will receive the minimum amount they could have received under the parties' settlement agreement. Assuming a two years statute of limitations is applicable to the class' FLSA claims, the class will recover about 165% of actual damages under the FLSA, and 106% of actual damages under Wisconsin law.  These results are exceptional when considering potential defenses advanced by Per Mar, as well as the difficulty of showing Per Mar's payroll computation error rose to the level of refusal to pay wages for dilatory or other unjust reasons, as required for an award of liquidated damages under Wisconsin law.

Proportionality between the class recovery and the fees and costs petitioned for should not be the primary consideration when deciding a reasonable fee in this case, because by enacting fee shifting provisions Congress and the Wisconsin legislature have already decided that the Plaintiffs' claims, no matter their size, are worth bringing.  Moreover, even applying Seventh Circuit case law on reasonable attorneys' fees in consumer class actions, the Lodestar method is appropriate in this case given the full recoveries achieved for the FLSA and Wisconsin classes.

Applying the Lodestar method, the $34,000 in fees and costs that Plaintiffs are petitioning for breaks down to fees of about $160 per hour not including a risk multiplier, in addition to reimbursement of a little over $9,000 in costs.   The Court should approve this modest petition for attorneys' fees.

## II.   Argument.

1.   <u>The Settlement Achieved a Full Recovery for Both the FLSA and Wisconsin Classes</u>.

Damages for FLSA and Wisconsin class members can be computed by comparing the overtime pay that they actually received with the overtime pay that they should have received had their regular weekly pay rates been used to compute their overtime pay.  Since total damages for Wisconsin class members equal $2,569.63, the total settlement payout of $2,727.32 equals a little over 106% of damages owed to the Wisconsin class.  (Ho Dec In Support of Final Settlement Approval, Ex. 2)

Per Mar Computed damages for the FLSA class for the time period between April 15, 2015 and June 22, 2017, a total of 117 workweeks. (Docket #129, ¶5) However, that entire period may not be covered by the FLSA:  Under the FLSA, the statute of limitations continues to run unless and until a written opt-in form is filed with the Court. 29 U.S.C. §216(b). The earliest opt-in form for anyone other than the named plaintiff was filed with the Court on April 26, 2018. (Docket

#67) Under a two years statute of limitations, which applies unless Per Mar's violation of the FLSA is found to be willful under 29 U.S.C. §255(a), those class members can only collect Wisconsin damages for the time period of April 15, 2015 and April 25, 2016. There is no evidence in the record showing that Per Mar applied its system of computing overtime pay under a known risk that the system violated the FLSA, rather than was, for example, negligent in failing to properly supervise its third party payroll company to ensure that it computed overtime pay correctly. Plaintiffs thus have little basis to argue that Per Mar's violation of the FLSA was willful, so that the Plaintiffs are only entitled to FLSA damages for the two years prior to the filing of their written consents with the Court. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 n. 4 (1988); 29 U.S.C. §216(b).

That FLSA class members likely can only recover damages under Wisconsin law for a portion of the damages period substantially affects the amount of damages they can recover. This is because whereas FLSA overtime is computed as time and a half the regular rate, Wisconsin overtime is computed as ½ of the regular rate. Contrast 29 U.S.C. §207(a)(1) (Overtime pay must be compensated at a rate not less than one and one-half times the regular rate at which he is employed) with *Kuhnert v. Advanced Laser Machining Inc.*, 2011 WI App 23 ¶15, 331 Wis. 2d 625) (Overtime pay equal number of overtime hours worked multiplied by ½ of the regular rate). As a result, for the exact same workweek FLSA damages equal three times Wisconsin law damages. Take the example of a week in which the employee's regular rate was $15 but was paid $18 (1.5 times a wage rate of $12 per hour) for each overtime hour worked. FLSA damages per overtime hour would equal 1.5 times the $15 minus the $18 paid, or $4.50 per overtime hour. Wisconsin damages per overtime hour would equal 0.5 times the $15 minus the $6 in overtime premiums actually paid per hour, or equal $1.50 per overtime hour.

Per Mar's calculations showing a total of $1,222.30 as owing to the FLSA class was computed as ½ of, rather than time and a half the regular rate.  Assuming an equal amount of overtime damages were owed for each week, $553.69 out of the $1,222.30 can be attributed to the 53 weeks between April 15, 2015 and April 25, 2016, for which FLSA class members can only recover the smaller amount of Wisconsin law damages.  $668.61 out of the $1,222.30 can be attributed to the 64 weeks between April 26, 2016 and July 22, 2017, for which the FLSA class members can recover the larger FLSA damages.  Because the $668.61 represents one third of wages owed to the FLSA class, total wages owed to the FLSA class equal $2,005.83 under the FLSA, and $553.69 under Wisconsin law.  If 6% liquidated damages are paid on the Wisconsin recovery, a total of $586.91 would be paid on Wisconsin law damages, leaving $3,310.55 available to pay the FLSA class' FLSA claims from the total recovery of $3,897.46 provided by paragraph 3(d) of the parties' settlement agreement.  A total payout of $3,310.55 on FLSA unpaid wages of $2,005.83 equals a liquidated damages payment of 65% of unpaid wages.

The settlement, in addition to recovering 100% of actual damages owed to each and every class member, will also recover about 65% liquidated damages on FLSA damages and about 6% liquidated damages on Wisconsin law damages.  That the class did not recover full liquidated damages reflect the strength of Per Mar's defenses and the difficulty of obtaining Wisconsin law liquidated damages, rather than suggest collusion between class counsel and Per Mar.

On the FLSA claim, there is no dispute that there were workweeks when class members would receive less overtime pay if computed using their regular rates, versus the overtime pay they received, which was computed by Per Mar using the type of work method. Per Mar has advanced the defense that these instances constitute overpayments that should be offset from workweeks when the Plaintiffs would receive more overtime pay if computed using the type of work method.

(Docket #33, pg. 12-13) In particular, the parties disagree over whether *Howard v. City of Springfield*, 274 F. 3d 1141 (7th Cir. 2001) is controlling in this case. See Id.  Had Per Mar's defense succeeded, the alleged "overpayments" would have offset most, if not all of the overtime pay owed to FLSA class members.  (Docket #133-1, pg. 4) The FLSA class accepting 65% rather than full 100% liquidated damages constitute a reasonable compromise on a disputed claim, rather than evidence collusion between class counsel and Per Mar.

On the Wisconsin law claim, liquidated damages under Wis. Stat. §109.11(2) are far more difficult to obtain than liquidated damages under the FLSA.  §109.11(2) Liquidated damages of *up to* 50% should be awarded only when the employer refused to pay wages for dilatory or other unjust reasons. *Johnson v. Roma-Waterford, LLC*, 2013 WI App 38 ¶44, 346 Wis. 2d 612.  Errors that resulted from the employer's failure to investigate the legality of its payroll practices, which were corrected following the filing of the lawsuit, may not amount to dilatory or unjust reasons for withholding wages. *Boutell v. Craftmaster Painting*, 2018 WL 6519065 *7-8 (W.D. WI. 2018) (Banking of overtime hours worked constituted a willful violation under the FLSA but may not entitle plaintiff to §109.11(2) liquidated damages under Wisconsin law). In this case, Per Mar apparently used the type of work method to compute overtime pay because of payroll software set up by a third party provider; and corrected its overtime computation method on July 22, 2017, shortly after the Plaintiffs amended their complaint to add the overtime pay computation claim. Full wage recovery plus 6% liquidated damages represents an excellent result for the Wisconsin class, when it would have faced an uphill battle to obtain any liquidated damages through trial.

    2.    <u>The Lodestar Method Should be Used to Measure the Reasonableness of the Petitioned for Fees</u>.

Both §216(b) of the FLSA and Wis. Stat. §109.03(6) entitles the prevailing plaintiff in a wage lawsuit to recover actual attorneys' fees. *Jacobson v. American Tool Co. Inc.*, 222 Wis. 2d

384, 401 (Ct. App. 1998).  Interpreting another fee shifting statute, the Seventh Circuit held in *Anderson v. AB Painting & Sandblasting Inc.*, 578 F. 3d 542, 546 (7th Cir. 2009) that a District Court erred by reducing a fee award on the ground that more than $50,000 in fees would be disproportionate to the $6,500 recovered for the client.  The Seventh Circuit held:

> Fee shifting provisions signal Congress' intent that violations of particular laws be punished, and not just large violations that would already be checked through the incentives of the American Rule…Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy.  That is the whole point of fee shifting-it allows plaintiffs to bring those types of cases because it makes no difference to an attorney whether she receives $20,000 for pursing a $10,000 claim or $20,000 for pursuing a $100,000 claim.  Fee-shifting would not "discourage petty tyranny" if attorneys' fees were capped or measured by the amount in controversy.

*Anderson*, 578 F. 3d at 545. *See similarly Millea v. Metro-North R. Co.*, 658 F. 3d 154, 169 (2nd Cir. 2011) (District Court erred by requiring proportionality between attorneys' fees and client recovery when the purpose of a fee shifting statute is to generate fees disproportionate to client recovery in order to attract counsel). While a court should evaluate whether the fees petitioned for are reasonable, its analysis should focus on whether there was some other element of the case seemed unreasonable, rather than on proportionality between the petitioned for fees and the client recovery.  *Anderson*, 578 F. 3d at 546.  Because the legislature has already decided that the claims were worth bringing even if small, the district court does not have discretion to reduce fees on the ground that the claims wee too small to justify litigating at great cost:

> Reasonableness has nothing to do with whether the district court thinks a small claim was "worth" pursuing at great cost. Fee-shifting statutes remove this normative decision from the court. If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing. The court must then assume the absolute necessity of achieving that particular result and limit itself to determining whether the hours spent were a reasonable means to that necessary end…For example, it is absolutely permissible to spend $100,000 litigating what is known to be a $10,000 claim if that is a reasonable method of achieving the result.

*Anderson* at 546. While in *Anderson* the Court dealt with a petition for attorneys' fees against the defendant, rather than a petition for attorneys' fees from a settlement fund, several district courts from within the Seventh Circuit have relied on Court of Appeals cases addressing fee petitions against the defendant to refuse to strictly apply proportionality when evaluating a fee petition from a settlement fund. *Maley v. Stucky, Lauer & Young, LLP*, 2018 WL 66000082 (N.D. IN. 2018), *citing Moriarty v. Svec*, 429 F. 3d 710, 717-718 (7th Cir. 2005) (Awarded an adjusted Lodestar fee of $25,000 plus costs of $2,526.44 on a total class recovery of $6,000); *Vought v. Bank of America, N.A.*, 2013 WL 269139 *7 (C.D. IL. 2013), *citing Millea*, 658 F. 3d at 169 (Fact fee award was disproportionate to amount recovered for client does not make fee unreasonable when litigation was brought under a statute with a fee shifting provision).

This case should be treated like *Anderson*, *Maley*, and *Vought* because the Plaintiffs have brought their claims under statutes with fee shifting provisions, rather than because the Plaintiffs have brought class claims. Indeed, while the Seventh Circuit has approved district courts' consideration of proportionality when evaluating attorneys' fees in consumer class actions, it has never done so when evaluating a fee petition in a case involving a fee shifting statute. Moreover, there is no doubt that the lodestar method of determining reasonable attorneys' fees would be applicable if the Plaintiffs either prevailed at trial or settled the case while preserving their right to petition the Court for fees. *Anderson*, 578 F. 3d at 545; *Kalellush v. Bold Salons Inc.*, 2019 WL 402865 *2 (E.D. WI. 2019) (Awarding attorneys' fees of $9,555 on a settlement worth $1,132.86 pursuant to a fee petition filed after the settlement). Requiring Plaintiffs' counsel to insist on the right to petition the Court for fees in order to preserve the use of the Lodestar method to determine the reasonableness of fees would discourage settlements, as defendants are far less likely to settle if faced with uncertainty on the amount of attorneys' fees they may have to pay in a settlement.

Finally, even in consumer class actions the Lodestar method may be the appropriate method to determine the reasonableness of attorneys' fees, where the settlement result was sufficiently favorable to the class to assuage any concerns that the class had been short changed for the benefit of counsel. *In re Southwest Airlines Voucher Litig.*, 799 F. 3d 701, 704, 712 (7th Cir. 2015). A Court may find that class counsel achieved full recovery for the class, despite the dismissal of the class' claims for unjust enrichment and statutory damages, because meritless claims should not be assigned weight when evaluating whether class counsel has achieved a full recovery for the class. *Southwest Airlines*, 799 F. 3d at 712. Similarly, in this case any reduction in liquidated damages recovered by the class was the product of Per Mar's defenses, as well as the difficulty of recovering liquidated damages under Wis. Stat. §109.11(2)(a). There is no legitimate basis to find here that class counsel has short-changed the class for his own benefit. Just like in Southwest Airlines, the Lodestar method should be available to evaluate the reasonableness of the fee petition.

    3.    <u>Under the Lodestar Method the Fee Petition Should be Approved</u>.

In their Joint Suppelemental Brief for Settlement Approval, the parties explained that as of December 5, 2018, class counsel had spent 140 hours on the case, and incurred costs of $8,871.96 in costs, most of which were incurred by paying a claim administrator to mail FLSA opt-in notices to thousands of class members as ordered by the Court. Through final settlement approval class counsel will spend another 14.7 hours on this case, including 4.7 hours in late February and early March to compile a list of FLSA and Wisconsin class members to mail settlement notices to, 6 hours to prepare the parties' joint motion for settlement approval and computation spreadsheets, and about 4 hours to travel to and from, and attend the final settlement approval hearing. (Ho Dec. ¶2) Class counsel has also spent more than $400 to mail the settlement notices to about 800 FLSA

and Wisconsin class members. (Ho Dec. ¶3) The petitioned for attorneys' fees and costs of $34,000, once total costs of $9,271.96 have been deducted, represents a petition for $24,728.04 in attorneys' fees for more than 154 hours spent working on this case, for an hourly rate of $160 per hour.

There is no need for the Court to consider any risk multipliers before finding that an hourly rate of $160 is modest for an attorney of Class counsel's experience. The Plaintiffs' petition for attorneys' fees and reimbursement of costs advanced therefore should be approved by the Court.

Dated this 15th day of May, 2019.

By: /s/Yingtao Ho_____
Yingtao Ho (SBN 1045418)
Attorney for Plaintiffs
The Previant Law Firm S.C.
310 West Wisconsin Ave. Suite 100MW
Milwaukee, WI  53202
414-271-4500 (Telephone)
414-271-6308 (Fax)
Email: yh@previant.com